1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  SARAH MCGEORGE, | Case No. 1:21-cv-00016-SAB |
| 12          Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| 13       v. | (ECF Nos. 21, 22) |
| 14  COMMISSIONER OF SOCIAL SECURITY, | |
| 15          Defendant. | |
| 16 | |

17

## I.

18

## INTRODUCTION

19      Sarah McGeorge ("Plaintiff") seeks judicial review of a final decision of the

20 Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21 disability benefits pursuant to the Social Security Act.  The matter is currently before the Court

22 on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley

23 A. Boone.[1]  Plaintiff submits that the ALJ erred in: (1) improperly weighing medical opinions;

24 and (2) in failing to properly assess and provide clear and convincing reasons for discounting

25 Plaintiff's subjective pain complaints.  For the reasons set forth below, Plaintiff's Social Security

26 appeal shall be granted and this action remanded for further administrative proceedings.

27 / / /

28

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 10, 11.)

**II.**

**BACKGROUND**

**A.     Procedural History**

On April 24, 2017, Plaintiff applied for Title II disability insurance benefits.  (AR 209.)  Plaintiff's application was initially denied on August 4, 2017, and denied upon reconsideration on November 20, 2017.  (AR 127, 135.)   Plaintiff requested and received a hearing before Administrative Law Judge Joyce Frost-Wolf (the "ALJ").  (AR 141.)  Plaintiff appeared for the hearing on May 24, 2019, with the assistance of counsel.  (AR 42-72.)  On July 25, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 17-41.)  The Appeals Council denied Plaintiff's request for review on May 4, 2020.  (AR 6-11.)

On January 5, 2021, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On July 7, 2021, Defendant filed the administrative record ("AR") in this action.  (ECF No. 12.)   On February 8, 2022, Plaintiff filed an opening brief.  (Pl.'s Opening Br. ("Br."), ECF No. 21.)  On March 1, 2022, Defendant filed an opposition brief.  (Def.'s Opp'n ("Opp'n"), ECF No. 22.)  Plaintiff did not file a reply brief.

**B.     The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, May 27, 2020:

- The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.
- The claimant has not engaged in substantial gainful activity since February 24, 2016, the alleged onset date (20 CFR 404.1571 et seq.).
- The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, cervical degenerative changes, lupus, cannabis abuse, and Sjogren's syndrome (20 CFR 404.1520(c)).
- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

- Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally use ramps and stairs. She cannot use ladders, ropes, or scaffolding.  She requires a cane for ambulation. She can occasionally perform balancing, stooping, kneeling, crouching, and crawling. She can frequently perform handling and fingering. She can perform non-complex, routine tasks. She can have no public contact. She can have occasional coworker contact with no teamwork related tasks. She perform jobs that have goal-oriented tasks that do not require a production pace such as that of a production line or fast paced quota.

- The claimant is unable to perform any past relevant work (20 CFR 404.1565).

- The claimant was born on June 14, 1973 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

- The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

- The claimant has not been under a disability, as defined in the Social Security Act, from February 24, 2016, through the date of this decision (20 CFR 404.1520(g)).

(AR 23-36.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which,

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits.

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in: (1) improperly weighing certain medical opinions in the record; and (2) failing to properly assess and provide clear and convincing reasons for discounting Plaintiff's subjective pain complaints. For the reasons explained below, the Court finds the ALJ erred in weighing the medical opinions of record and this matter is remanded for further proceedings.

### A.    The ALJ's Evaluation of Medical Opinions

Plaintiff submits the ALJ erred by failing to follow the applicable regulations and improperly rejecting the treating source opinion of Dr. Pusateri and examining psychologist Dr. Michiel.  (Br. 9-12.)  Plaintiff also avers this leaves the residual functional capacity ("RFC") determination unsupported.

1.    Legal Standards

a.    **Residual Functional Capacity**

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20 C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable

5

1   impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison v.

2   Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  At step four the RFC is used to determine if a

3   claimant can do past relevant work and at step five to determine if a claimant can adjust to other

4   work.  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable,

5   the hypothetical posed must include 'all of the claimant's functional limitations, both physical

6   and mental' supported by the record."  Thomas, 278 F.3d at 956.

7          When applying for disability benefits, the claimant has the duty to prove that she is

8   disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly

9   develop the record and to assure that the claimant's interests are considered."  Widmark v.

10  Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443

11  (9th Cir. 1983)).  The ALJ has a duty to further develop the record where the evidence is

12  ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the

13  evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242

14  F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of ambiguity or inadequacy in the record is

15  not required to trigger the necessity to further develop the record where the record itself

16  establishes the ambiguity or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

17         **b.      The 2017 Regulatory Framework for Weighing Medical Opinions**

18         The Social Security Administration revised its regulations regarding the consideration of

19  medical evidence — applying those revisions to all claims filed after March 27, 2017.  See

20  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL

21  168819, *5844 (Jan. 18, 2017).  Plaintiff filed her claim on April 24, 2017 (AR 209; Br. 2);

22  therefore, the revised regulations apply.  See 20 C.F.R. § 404.1520c.  Plaintiff generally accepts

23  that the analysis is subject to the new regulations, but still repeatedly argues that the Ninth

24  Circuit still requires specific and legitimate reasons for rejecting the opinions of Drs. Pusateri

25  and Michiel.  (Br. 10.)  The Court finds the 2017 regulations supersede the previous standards

26  enunciated by the Ninth Circuit under previous regulatory standards.

27         Under the updated regulations, the agency "will not defer or give any specific evidentiary

28  weight, including controlling weight, to any medical opinion(s) or prior administrative medical

1    finding(s), including those from [the claimant's own] medical sources."   20 C.F.R. §§

2    404.1520c(a), 416.920c(a).[3]  Thus, the new regulations require an ALJ to apply the same factors

3    to all medical sources when considering medical opinions, and no longer mandate particularized

4    procedures that the ALJ must follow in considering opinions from treating sources.   See 20

5    C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

6        "When a medical source provides one or more medical opinions or prior administrative

7    medical findings, [the ALJ] will consider those medical opinions or prior administrative medical

8    findings from that medical source together using" the following factors: (1) supportability; (2)

9    consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend

10   to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§

11   404.1520c(a)-(c)(1)-(5), 416.920c(a)-(c)(1)-(5).   The most important factors to be applied in

12   evaluating the persuasiveness of medical opinions and prior administrative medical findings are

13   supportability and consistency.  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).  Regarding the

14   supportability factor, the regulation provides that the "more relevant the objective medical

15   evidence and supporting explanations presented by a medical source are to support his or her

16   medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

17   opinions or prior administrative medical finding(s) will be."   20 C.F.R.  §§ 404.1520c(c)(1),

18   416.920c(c)(1).   Regarding the consistency factor, the "more consistent a medical opinion(s) or

19   prior administrative medical finding(s) is with the evidence from other medical sources and

20   nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

21   administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

22       Accordingly, the ALJ must explain in the decision how persuasive they find a medical

23   opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §§

24   404.1520c(b)(2), 416.920c(b)(2).  Additionally, the ALJ "may, but [is] not required to, explain

25   how [they] considered the [other remaining factors]," except when deciding among differing yet

26

27   _____

[3]  The regulations at 20 C.F.R. § 404.1501 et seq., reference the regulations which apply to disability insurance
28   benefits, and the regulations at 20 C.F.R. § 416.901 et seq. apply to supplemental security income, though the
     regulations are generally the same for both types of benefits.

1    equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)-(3),

2    416.920c(b)(2)-(3).  Further, the ALJ is "not required to articulate how [he] considered evidence

3    from nonmedical sources."  20 C.F.R. § 404.1520c(d).

4        The "treating source rule" allowed an ALJ to reject a treating or examining physician's

5    uncontradicted medical opinion only for "clear and convincing reasons," and allowed a

6    contradicted opinion to be rejected only for "specific and legitimate reasons" supported by

7    substantial evidence in the record.  See, e.g., Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir.

8    2017).  The revised regulations no longer use the term "treating source," but instead use the

9    phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use.

10   See 20 C.F.R. §§ 404.1520c, 416.920c; 82 FR 5844-01, 2017 WL 168819, at *5852–53

11   (eliminating "treating source rule").  In sum, the requirement that an ALJ provide "clear and

12   convincing" or "specific and legitimate" reasons for discounting a treating or examining opinion

13   no longer applies, as this "measure of deference to a treating physician is no longer applicable

14   under the 2017 revised regulations."  Jean T. v. Saul, No. 20CV1090-RBB, 2021 WL 2156179,

15   at *5 (S.D. Cal. May 27, 2021); see also, e.g., Jones v. Saul, No. 2:19-CV-01273 AC, 2021 WL

16   620475, at *7-10 (E.D. Cal. Feb. 17, 2021) (finding the new regulations valid and entitled to

17   Chevron deference, and because prior case law "is inconsistent with the new regulation, the court

18   concludes that the 2017 regulations effectively displace or override" it); Meza v. Kijakazi, No.

19   1:20-CV-01216-GSA, 2021 WL 6000026, at *6 (E.D. Cal. Dec. 20, 2021) ("courts in this circuit

20   have rejected the notion that the treating physician rule still pertains to claims filed after March

21   27, 2017").

22       Nonetheless, the new regulations still require the ALJ to explain his reasoning and to

23   specifically address how he considered the supportability and consistency of the opinion.  20

24   C.F.R. §§ 404.1520c, 416.920c; see P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at

25   *3 (N.D. Cal. Mar. 15, 2021) ("Although the regulations eliminate the 'physician hierarchy,'

26   deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ

27   must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s]

28   all of the medical opinions."") (citation omitted).  As always, the ALJ's reasoning must be free of

1   legal error and supported by substantial evidence.  Indeed, the Court notes that, for example,

2   where an ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the

3   new regulatory standard, it would almost certainly pass scrutiny under the old standard as well.

4   See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (noting that inconsistency with

5   independent clinical findings in the record is a specific and legitimate reason to reject a

6   contradicted opinion of a treating physician).  Thus, even under the new regulatory framework,

7   the Court still must determine whether the ALJ adequately explained how he considered the

8   supportability and consistency factors relative to medical opinions and whether the reasons were

9   free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV

10   20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

11       2.       The Court finds Plaintiff has Sufficiently Demonstrated the ALJ Erred in
                  Weighing the Medical Opinions and Defendant Failed to Address Plaintiff's
12                Challenge

13

14       When evaluating the persuasiveness of medical opinions under the new regulations, the

15   most important factors are supportability and consistency.  For the reasons explained below, the

16   Court finds that Plaintiff has demonstrated errors in the record, and the Defendant has failed to

17   adequately address Plaintiff's challenges and the Court finds remand appropriate based on the

18   record as a whole, the ALJ's opinion, and the parties' arguments as presented to the Court.

19       Plaintiff argues: the ALJ pointed to no evidence from a treating or an examining medical

20   professional to support the mental RFC; that this renders the ALJ's RFC unsupported inasmuch

21   as the RFC is based upon the opinion of non-examining physicians who reviewed none of the

22   mental health treatment records; that the ALJ's reliance on the opinion of non-examining

23   psychologists, Drs. D'Adamo and Zukowsky is unsupported inasmuch as the ALJ failed to

24   reconcile significant internal inconsistencies; and the ALJ's rejection of the opinions of Drs.

25   Pusateri and Michiel is unsupported and erroneous as the ALJ failed to articulate specific and

26   legitimate reasons for doing so.  (Br. 10.)

27       Turning to the specific challenges, Plaintiff submits there are two critical errors as to the

28   ALJ's finding that Drs. D'Adamo's and Zukowsky's opinions were consistent with the record

1    and supported by claimant's psychological treatment.  (Ar. 32-33.)  The ALJ's weighing of these

2    opinions is as follows:

3                  As for the opinions regarding the claimant's mental impairments, I
              considered the opinions of Michael D'Adamo, Ph.D., and Norman
4              Zukowsky, Ph.D., and found them persuasive, as they were
              consistent with the record. Dr. D'Adamo opined that the claimant
5              was best suited for stable job routines in which she can set her own
              pace with minimal coordination with others and no public contact
6              (Exhibit 1A pg. 14-15). Dr. Zukowsky opined that the claimant
              could perform simple work procedures, regularly attend work for
7              40-hour workweeks, and can interact with other people briefly
              (Exhibit 3A pg. 16-17). The Agency doctors supported their
8              opinions by citing to the claimant's psychological treatment,
              including the findings of mental status examinations (Exhibit 1A
9              pg. 12; 3A pg. 11). The claimant was usually described as pleasant
              and cooperative, having normal speech, making appropriate eye
10             contact, fairly well groomed, and in no acute distress (Exhibit 3F
              pg. 2; 5F pg. 4; 11F pg. 1-8; 16F pg. 8; 17F pg. 7; 23F pg. 2, 6, 10,
11             14, 18, 21; 22F pg. 1-4, 9-10, 12, 14, 16, 19-20; 24F pg. 2; 25F pg.
              2; 26F pg. 5, 10, 55, 91, 97). The claimant denied homicidal
12             ideation (Exhibit 14F pg. 3; 20F pg. 7; 22F pg. 1-4, 9-10, 12, 14,
              16, 19-20). The claimant had average intelligence; she could state
13             similarities in objects; and she could interpret proverbs (Exhibit
              14F pg. 3; 20F pg. 7; 22F pg. 1 -4, 9-10, 12, 14, 16, 19-20). The
14             claimant could remember 3/3 items immediately and 2/3 items
              upon delay (Exhibit 14F pg. 3). There was no indication from the
15             record that the claimant is unable to understand her treatment or
              medication usage. The claimant was able to understand and
16             concentrate sufficiently to make food, perform household chores,
              drive a vehicle, go grocery shopping, manage money, watch
17             television, and use a computer/telephone, supporting she could
              perform simple tasks not at a production rate (Exhibit 3E pg. 3-5).
18             The claimant had organized and goal-directed thought process
              (Exhibit 14F pg. 3; 20F pg. 7; 22F pg. 1-4, 9-10, 12, 14, 16, 19-
19             20). The record did not indicate that the claimant has auditory or
              visual hallucinations or other stimuli that would distract her
20             (Exhibit 14F pg. 3; 20F pg. 7). The claimant could spell "world"
              backwards and solve simple math problems (Exhibit 14F pg. 3;
21             20F pg. 7). The claimant was not prescribed or taking attention
              deficit related medication. The claimant was usually described as
22             alert and oriented, fairly well groomed, well developed, having
              depressed to normal mood and affect, and having fair judgment
23             (Exhibit 3F pg. 2; 5F pg. 4; 11F pg. 1-8; 16F pg. 8; 17F pg. 7; 23F
              pg. 2, 6, 10, 14, 18, 21; 22F pg. 1-4, 9-10, 12, 14, 16, 19-20; 24F
24             pg. 2; 25F pg. 2; 26F pg. 5, 10, 55, 91, 97). The claimant denied
              suicidal ideation during the relevant period (Exhibit 14F pg. 3; 20F
25             pg. 7; 22F pg. 1-4, 9-10, 12, 14, 16, 19-20).

26   (AR 32-33.)

27         First of these alleged critical errors, Plaintiff argues the Plaintiff had not yet begun mental

28   health treatment at the time that either Drs. D'Adamo or Zukowsky reviewed the case because

1   Plaintiff's mental health treatment began in February of 2018.  Thus, Plaintiff submits that the

2   ALJ's statement "[t]he Agency doctors supported their opinions by citing to the claimant's

3   psychological treatment, including the findings of mental status examinations," is not accurate

4   and erroneous support for giving such weight to the opinions.

5        Second, Plaintiff argues the ALJ's reliance on these opinions is further undermined by a

6   significant and unreconciled inconsistency in the opinion evidence from Dr. D'Adamo.  Plaintiff

7   argues that as Plaintiff had not yet begun mental health treatment, Dr. D'Adamo was left with the

8   report of the consultative examining psychologist, Dr. Michiel, who opined Plaintiff is "unable to

9   maintain attention and concentration to carry out simple job instructions." (AR 424.)  Plaintiff

10  emphasizes that Dr. D'Adamo's stated the opinion of Dr. Michiel is "well-supported by the

11  clinical. . . findings and there is no evidence to the contrary."  (AR 85.)  Plaintiff states that

12  nowhere in her determination does the ALJ address or reconcile this gap in opinion, and thus

13  maintains the decision to adopt the opinion of Dr. D' Adamo, yet at the same time reject the

14  finding of Dr. Michiel, is contradictory and lacks the legitimacy required under Lester, 81 F.3d at

15  830-31.  (Br. 11.)

16       The ALJ weighed Dr. Michiel's opinion as follows:

17            I also did not find the opinion of Ekram Michiel, M.D., and did not
              find it persuasive, as it was internally inconsistent and not
18            consistent with the record. Dr. Michiel reported that the claimant
              was unable to maintain attention and concentration to perform
19            simple tasks (Exhibit 14F pg. 4). Although Dr. Michiel supported
              his opinion with the findings of his consultative examination, his
20            findings were inconsistent with his opinion as the claimant had
              goal-directed thought process, denied experiencing hallucinations,
21            and could perform simple calculations (Id. at 1-4). The rest of the
              record was also inconsistent with this opinion regarding the
22            claimant's ability to concentrate, persist, and maintain pace. The
              claimant was able to understand and concentrate sufficiently to
23            make food, perform household chores, drive a vehicle, go grocery
              shopping, manage money, watch television, and use a
24            computer/telephone, supporting she could perform simple tasks not
              at a production rate (Exhibit 3E pg. 3-5). The claimant had
25            organized and goal- directed thought process (Exhibit 14F pg. 3;
              20F pg. 7; 22F pg. 1-4, 9-10, 12, 14, 16, 19-20). The record did not
26            indicate that the claimant has auditory or visual hallucinations or
              other stimuli that would distract her (Exhibit 14F pg. 3; 20F pg. 7).
27            The claimant could spell "world" backwards and solve simple
              math problems (Exhibit 14F pg. 3; 20F pg. 7). The claimant was
28            not prescribed or taking attention deficit related medication.

1

2     (AR 33.)

3         Defendant responds to the first argument, by stating both Drs. "review[ed] some evidence

4     about mental functioning, and discussed it (AR 82, 84, 102-103)." (Opp'n 17.) Defendant also

5     argues Plaintiff reads the decision too narrowly by suggesting the ALJ is referring to specialist

6     treatment rather than overall treatment for mental impairments. (Opp'n 17-18.)

7         Defendant does not explain the significance of the "some evidence" about mental

8     functioning, nor the discussion. The Defendant's cited pages do not lend themselves to natural

9     understanding of the significance, and the Court will not strain to gleam such significance. (See

10    AR 82, 84, 102-103.) Take in isolation, the Court may be able to find any alleged error

11    harmless, or that the analysis is supported by ample substantial evidence, or that Plaintiff is

12    taking form over substance. However, it is not made clear to the Court as to the this first of

13    Plaintiff's issues, and without more, the deficiency is enhanced and becomes determinative in the

14    Court's view, because of the connection to the next pointed argument of Plaintiff that was left

15    almost completely lacking of a direct explanation from Defendant. The next deficiency even

16    more so does not lend itself to natural understanding or rectification by the Court, even if the

17    Court were to accept Defendant's other overall arguments.

18        In total, Defendant does not clearly or directly counter Plaintiff's argument that it appears

19    from the record that Dr. D'Adamo found the opinion of Dr. Michiel was "well-supported by the

20    clinical. . . findings and there is no evidence to the contrary." (AR 85.) Instead, Defendant

21    mounts overall arguments that the ALJ's assessment of all of the medical opinions was proper,

22    and applied the regulations in evaluating these assessments, and considered the two most

23    important factors, supportability and consistency, in determining which assessments were

24    persuasive. It is not clear that Defendant even recognized Plaintiff's specific and clearly

25    mounted challenge. (See Opp'n 6, 11, 17, 18, 19.) This appears so, as in Defendant's summary

26    of the medical evidence, while Defendant notes Dr. Michiel found Plaintiff could not maintain

27    attention and concentration to carry out simple instructions (AR 424), Defendant states that Dr.

28    D'Adamo found "Dr. Michiel's opinion only partially persuasive (AR 84)." (Opp'n 6.)

However, this record does not identify Dr. Michiel by name.  (AR 84.)  It could possibly be attributed to Dr. Michiel as it states: "The CE examiner diagnosed Mood Disorder and opined that her condition prevents her from maintaining CPP in a job.  This opinion is partially persuasive as it is partially consistent with the totality of the evidence.  The longitudinal evidence suggests . . . periods of intense emotion are short lived . . ."  (AR 84.)  However, on the next page, under the specific separate block table entry for Dr. Michiel, Dr. D'Adamo's report states [t]he MSS is well-supported by the clinical and radiographic findings and there is no evidence to the contrary."  (AR 85.)  The Court ponders whether this may be a mistake in the record, as although left unaddressed by Defendant in total, Plaintiff for whatever reason omits the word "radiographic" from their citation of this short sentence.  (See Br. 11.)  The notation possibly could have been meant to apply to Valley Health Resources record by Dr. Damania on the same page.  (AR 85.)  On the other hand, it is possible Dr. D'Adamo did find this other record to be the partially inconsistent, and did mean to state Dr. Michiel's assessment was well-supported.  (See AR 85 ("claimant's presentation at the IMCE of 7/17 is inconsistent with TSS evidence . . . she had been cutting and carrying wood.").)

Defendant does clearly address Plaintiff's potential incorrect recitation of a record relating to Dr. Murphy (Opp'n 19 n. 15), a fact that is not significantly relevant to the Plaintiff's challenge, but appears to have mistakenly or, possibly out of their own confusion over the records, never provided a direct response to Plaintiff's specific argument as to Dr. D'Adamo and Dr. Michiel.  Regardless, Defendant does not address this inconsistency (or at the least, lack of clarity) in the record, which the Court finds to be a glaring deficiency given this was one of Plaintiff's primary arguments for their primary challenge.  (See Br. 11 ("Here, the ALJ commits two critical errors").)

Defendant notes: "[j]ust as the ALJ stated, Dr. D'Adamo and Dr. Zukowsky noted Plaintiff's diagnoses, that she was taking antidepressants from primary care providers, and addressed Dr. Michiel's examination."  (Opp'n 17.)  It is unclear what Defendant means by the ALJ noted the Drs. "addressed" Dr. Michiel's examination," as Defendant first did not explain to the Court the significance of the records relating to Plaintiff's first argument, which again do not

1  lend themselves to natural understanding of their relevance, and did not address Plaintiff's

2  related second primary argument.  Based on the records and briefing, the Court's understanding,

3  without further clarification of the records, is only that by "addressing," Dr. D'Adamo noted Dr.

4  Michiel's "MSS is well-supported by the clinical and radiography and there is no evidence to the

5  contrary."  (AR 85.)

6        The Court finds this problematic for the reasons stated above, and because of the

7  inconsistency that Plaintiff states was left unaddressed by the ALJ, more significant because of

8  the fact the ALJ discounted Dr. Michiel's opinion.  Dr. D'Adamo found Plaintiff's ability to

9  carry out very short and simple instructions was not significantly limited, and her ability to carry

10 out *detailed instructions* was not significantly limited.  (AR 86.)  Dr. D'Adamo found Plaintiff's

11 ability to make simple work-related decisions was also not significantly limited, and that she did

12 not have understanding or memory limitations.  (AR 86.)  However, Dr. Michiel had opined that

13 Plaintiff was "unable to maintain attention and concentration to carry out [even] simple job

14 instructions." (AR 424.)  Dr. D'Adamo did find Plaintiff moderately limited in the ability to

15 maintain attention and concentration for extended periods.  (AR 86.)

16        When the Court considers the Plaintiff's arguments in conjunction as to Dr. Michiel and

17 Dr. D'Adamo, and further when considering the parties' back and forth on the next issue of Dr.

18 Pusateri regarding the number of incorrect versus correct references in the record, leaving the

19 Court to essentially make a determination of what percentage of incorrect records leads to legal

20 error, the lack of a direct response to Plaintiff's argument regarding Dr. Michiel's reference in

21 Dr. D'Adamo's opinion becomes remandable error in light of the other errors the Defendant

22 concedes exist in the record when arguing the next issues.[4]

---

23  [4]  The Court declines to proceed into a weighing of the proportion of correct and incorrect or proper/not proper

24 citations by the ALJ in regards to the weighing of Dr. Pusateri's opinion.  Again, given the lack of a direct response
to Plaintiff's primary argument as to Dr. Michiel and Dr. D'Adamo and the lack of clarity as to the potential

25 arguments to those vague records noted above, the Court will not attempt to determine whether the conceded errors
in the ALJ's citations as to Dr. Pusateri would separately tip over into harmful remandable error on their own or in

26 conjunction.

27  In this regard, the Court highlights the parties' arguments, for example, Plaintiff argues the ALJ cites to irrelevant
evidence that is not within the period of disability (AR 334, 510, 515, 519, 523, 527, 530, 533); cites to evidence

28 that contains no mental health examination (AR 390-392, 550, 560, 636, 642) and "for some unknown reasons, she
cites to a pelvic ultrasound" (AR 364).  (Br. 12.)  Plaintiff also argues the evidence cited does reflect mental health

1    Accordingly, for the above reasons, the Court finds the ALJ's findings as to Dr.

2   D'Adamo and Dr. Michiel do not adequately demonstrate relation to the factors of supportability

3   and consistency, taken together given the arguments presented by Plaintiff, the records noted

4   above (e.g., AR 84, 85, 424), and the lack of sufficient response to Plaintiff's specific challenge.

5   See 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and

6   supporting explanations presented by a medical source are to support his or her medical

7   opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

8   or prior administrative medical finding(s) will be."); 20 C.F.R. § 416.920c(c)(2) ("The more

9   consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence

10  from other medical sources and nonmedical sources in the claim, the more persuasive the

11  medical opinion(s) or prior administrative medical finding(s) will be."); Chaudhry v. Astrue, 688

12  F.3d 661, 671 (9th Cir. 2012) (ALJ properly relied more on non-examining physician's opinion

13
14  limitations, however, consistent with Dr. Trevino, and contrary to the ALJ's finding: the Plaintiff is frequently found
    to appear tired (AR 396, 397, 398); regularly reports period of fatigue (AR 446, 510, 532, 495); reports fits of rage
15  (AR 494); and is diagnosed with major depressive disorder, severe, with frequent changes in medication, indicative
    of the uncontrolled nature of the impairment (AR 483, 489, 492, 493, 495, 499). (Br. 12.)  On the other hand,
16  Defendant does present reasonable arguments concerning the supportability and consistency findings: suicidal
    ideation (AR 34, citing 14F3, 20F7, 22F1-4, 9-10, 12, 14, 16, 19-20/ AR 423, 465, 480-84, 488-89, 491, 493, 495,
17  498-99); and that the ALJ cited to dozens of records that were inconsistent with Dr. Pusateri's assessment (AR 34,
    citing 3E3-5/ AR 247-49 (reported daily activities); 3F2, 5F4, 11F1-8, 16F8, 17F7, 23F2, 6, 10, 14, 18, 21, 22F1-4,
    9-10, 12, 14, 16, 19-20, 24F2, 25F2, 26F5, 10, 55, 91, 97/ AR 314, 334, 391-98, 433, 445, 511, 515, 519, 523, 527,
18  530, 480-83, 488-89, 491, 493, 495, 498-99, 533, 536, 550, 555, 600, 636, 642). (Opp'n 20.)

19  However, the Defendant then concedes Plaintiff correctly highlights incorrect citations and invites the Court to
    balance such errors would be harmless.  While more than a scintilla of evidence is a low threshold, the Court
20  declines to make a determination whether there is substantial evidence in light of the presence of multiple errors, and
    the lack of direct response to the Plaintiff's primary argument above.  Specifically, Defendant responds that Plaintiff
21  "misstates some of those citations" in briefing, and that "[a]lthough some of the pages the ALJ cited came from
    before the alleged onset of disability (e.g., 5F4/ AR 334 (30 days before alleged onset of disability), 23F6, 10, 14,
22  18, 21/ AR 515, 519, 523, 527, 530), the others were within the relevant period, including at least one reference that
    Plaintiff incorrectly claims pre-dated her alleged onset of disability (e.g., 24F2/ AR 533 (January 23, 2018)) . . .
23  [a]nd 26 of the citations that the ALJ offered showed some mental status findings from the relevant period, so any
    error in citing a few records that pre-dated the alleged onset was harmless . . . [l]ikewise, although Plaintiff is correct
24  that two of the dozens of citations the ALJ offered did not show any mental status findings (26F5, 10/ AR 550, 555),
    all the others included some evidence relevant to mental status [and] [f]inally, Plaintiff contends that 'for some
25  unknown reasons, she cites to a pelvic ultrasound' when evaluating Plaintiff's mental status Plaintiff has not read the
    ALJ's decision carefully, though [as] [t]he pelvic ultrasound Plaintiff references is Exhibit 7F7 (AR 364) [and] [t]he
26  ALJ cited Exhibit 17F7 on several occasions as evidence of intact mental functioning (e.g., AR 24, 25, 26, 30, 32,
    33, 34, citing, inter alia, 17F7) [and] [t]he ALJ's actual record citation referred to an August 2017 clinic note finding
27  that Plaintiff was oriented and had a normal mood and affect (AR 445), which is relevant evidence of mental status.
    Plaintiff's misreading of the ALJ's decision does not demonstrate error."  (Opp'n 20-21.)

28  The Court would be more inclined to accept Defendant's argument that Plaintiff is simply asking the Court to re-
    weigh the evidence if not for the reasons explained above.

1   than examining physician's opinions to assess the claimant's RFC); Thomas, 278 F.3d at 957

2   ("The opinions of non-treating or non-examining physicians may also serve as substantial

3   evidence when the opinions are consistent with independent clinical findings or other evidence in

4   the record.").

5                                               **V.**

6                                **CONCLUSION AND ORDER**

7          Based on the foregoing, the Court finds that the ALJ erred in weighing the opinions of

8   Dr. D'Adamo and Dr. Michiel; Defendant has not appropriately responded to Plaintiff's

9   challenge to such findings; and thus the Court concludes the ALJ's findings do not sufficiently

10  demonstrate relation to the factors of supportability and consistency for the reasons explained in

11  this opinion.[5]  Plaintiff's request for remand shall be granted.

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18

---

19  [5]  The Court declines to make a determination as to Plaintiff's challenge that the ALJ failed to provide clear and
     convincing reasons for discounting her symptom testimony.  Plaintiff argues the ALJ based the RFC solely upon
20  objective evidence, cites only objective clinical finings, and does not properly address or discuss any of the other
     factors in SSR 16-3p.  Defendant responds that the ALJ did consider Plaintiffs daily activities, and did consider
21  Plaintiff's frequency of symptoms, and type and effectiveness of treatment.  Defendant is largely correct that
     Plaintiff did not mount specific challenges aside from arguing a lack of objective medical evidence and thus appears
22  to have waived an argument that these specific factors did not constitute clear and convincing reasons, and Plaintiff
     further failed to file a reply brief to address this argument.  Nonetheless, as the case is being remanded, the agency
23  shall reconsider Plaintiff's symptom testimony in relation with the error identified above.  See Moore v. Comm'r of
     Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002) ("The clear and convincing standard is the most demanding
24  required in Social Security cases."); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a
     claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and
25  convincing reason for rejecting it."); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants
     should not be penalized for attempting to lead normal lives in the face of their limitations . . . [o]nly if the level of
26  activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's
     credibility."); Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (daily activities can form the basis of an adverse
27  credibility determination if the claimant's activity contradicts the claimant's testimony or if a claimant is able to
     spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are
28  transferable to a work setting, and the ALJ must make specific findings as to the daily activities and their
     transferability to conclude that the claimant's daily activities warrant an adverse credibility determination.).

1    Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

2  Commissioner of Social Security is GRANTED and this matter is remanded back to the

3  Commissioner of Social Security for further proceedings consistent with this order.   It is

4  FURTHER ORDERED that judgment be entered in favor of Plaintiff Sarah McGeorge and

5  against Defendant Commissioner of Social Security.   The Clerk of the Court is directed to

6  CLOSE this action.

7

8  IT IS SO ORDERED.

9  Dated:   **August 3, 2022**

   UNITED STATES MAGISTRATE JUDGE